UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE<br>CORPORATION,<br>    550 17th Street, N.W.,<br>    Washington, D.C. 20429,<br><br>        Plaintiff,<br><br>    vs.<br><br>THE ADAM CORPORATION/GROUP,<br>    1111 Briarcrest Drive, Suite 300,<br>    Bryan, Texas 77802,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No.<br><br><br><br>COMPLAINT |

Plaintiff Federal Deposit Insurance Corporation ("FDIC"), Manager of the FSLIC
Resolution Fund, for its complaint ("Complaint") against The Adam Corporation/Group ("Adam
Corp"), alleges as follows:

### Parties

1.      The FDIC is a government corporation organized and existing under the Federal
Deposit Insurance Act, 12 U.S.C. §§ 1811 *et seq.* Pursuant to 12 U.S.C. § 1819(b)(1), the FDIC
is an agency of the United States for the purpose of bringing an action under 28 U.S.C. § 1345.
Pursuant to 12 U.S.C. § 1821a(a)(1), the FDIC is the Manager of the FSLIC Resolution Fund,
successor in interest to the Federal Savings and Loan Insurance Corporation ("FSLIC").

2.      Adam Corp is a corporation organized and existing under the laws of the State of
Texas, with its principal place of business in Bryan, Texas.

<u>Jurisdiction and Venue</u>

3.    The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1345 because it is a civil action commenced by the FDIC, which, for the purpose of § 1345, is an agency of the United States; and pursuant to 28 U.S.C. § 1331 because all cases to which the FDIC is a party are deemed to arise under the laws of the United States, by virtue of 12 U.S.C. § 1819(b)(2)(A).

4.    Venue is proper in this forum pursuant to Section 13.4 of an agreement entitled "Termination Agreement," dated July 31, 1996, between the FDIC and Adam Corp, and certain subsidiaries of Adam Corp.  Venue is also proper in this forum pursuant to 28 U.S.C. § 1391(b) and (c), because a substantial part of the events giving rise to the claim occurred in this district.

<u>General Allegations</u>

<u>Overview of the Action</u>

5.    On October 14, 1988, Defendant Adam Corp entered into a transaction with FSLIC whereby Adam Corp purchased the assets and assumed certain liabilities of eleven failed savings and loan associations in Texas ("Acquired Associations").  The assets from the Acquired Associations were consolidated into NuOlney Savings Association, Olney, Texas ("NuOlney"), which, upon consummation of the transaction, changed its name to Olney Savings and Loan Association ("Olney").  Adam Corp owned all of the stock of Olney.

6.    The terms of the transaction between Adam Corp and FSLIC were set forth in a contract called an "Assistance Agreement," dated October 14, 1988.  In general, under the Assistance Agreement, FSLIC agreed to provide Olney with certain financial assistance to cover losses that might arise out of the assets and liabilities of the Acquired Associations.  Further, Section 9 of the Assistance Agreement required Adam Corp to share with FSLIC 60 percent of the federal and state tax savings that Adam Corp and its subsidiaries realized as a result of

certain types of tax deductions or exclusions that generated tax benefits, described in Section 9(a) as "Tax Benefit Items." *See* Assistance Agreement § 9 at 47-62.

7.    In 1989, Congress created the FSLIC Resolution Fund, which succeeded to FSLIC's rights under the Assistance Agreement, and designated the FDIC as "Manager" of the Fund. Hereinafter "FDIC" shall refer to the FDIC as Manager of the FSLIC Resolution Fund as well as its predecessor, FSLIC.

8.    In December 1989, Olney changed its name to AmWest Savings Association ("AmWest"). In 1994, Adam Corp transferred AmWest's stock to a newly-created, wholly-owned subsidiary named TAC Financial. Subsequently, AmWest changed its name to First American Bank Texas, and then changed its name again to First American Bank. For ease of reference, First American Bank shall refer to itself as well as to its predecessors, NuOlney, Olney, AmWest and First American Bank Texas; Adam Corp shall refer to itself as well as to its subsidiary, TAC Financial; and, collectively, Adam Corp, TAC Financial and First American Bank shall be referred to as the "Consolidated Group," because they filed consolidated tax returns.

9.    On July 31, 1996, Adam Corp and the FDIC terminated the Assistance Agreement by entering into the Termination Agreement. However, the Termination Agreement expressly provided that Section 9 of the Assistance Agreement, and certain other specified provisions, survived the termination and remained binding on the parties. *See* Termination Agreement § 2.2 at 2-3; *id.* § 7.2(b) at 22-23. For purposes of this Complaint, the surviving Section 9, as modified by the Termination Agreement, shall be referred to as Section 9.

10.    On March 31, 2005, pursuant to a contract dated August 23, 2004, Adam Corp sold all of its shares in First American Bank to Citibank, Texas ("Citibank") for a purchase price

3

of $972 million (the "Sale"). As part of the Sale, Adam Corp retained the obligation to share with the FDIC 60 percent of certain federal and state tax savings that the Consolidated Group realized as a result of any Tax Benefit Items under Section 9.

11.    On its 2004 federal tax return covering the period from October 1, 2004, through September 30, 2005, the Consolidated Group reported a capital loss of approximately $314 million as a result of the Sale. The Consolidated Group generated this $314 million capital loss—instead of incurring a taxable gain—because Adam Corp's basis in the stock of First American Bank was approximately $1 billion higher than it would have been without the special tax treatment afforded the Tax Benefit Items. As a direct result of the special tax treatment afforded the Tax Benefit Items, Adam Corp saved $257.8 million in tax payments, which is the amount Adam Corp would otherwise have had to pay as a result of the Sale. Under Section 9, Adam Corp owes the FDIC $154.7 million due to the $257.8 million in tax savings. The amount due to the FDIC is calculated as follows: ($257.8 million in tax savings) x (60 percent share to the FDIC) = $154.7 million.

12.    Adam Corp has refused to pay the FDIC the $154.7 million it owes, as well as additional unpaid amounts discussed below. Adam Corp's failure to pay the FDIC is a breach of Section 9, for which the FDIC seeks damages.

A.    The Treatment Of Tax Benefits Under Section 9.

13.    The assistance to be provided by FSLIC to First American Bank pursuant to the Assistance Agreement included the following: (i) payments for losses realized on the disposition or liquidation of certain assets ("Covered Asset Losses"), (ii) payments of amounts necessary to guarantee a specified yield on certain assets ("guaranteed yield payments"), and (iii) issuance by FSLIC to First American Bank of an interest bearing note (the "FSLIC note") with a principal

4

amount equal to the excess of the liabilities assumed over the assets acquired by First American Bank from the Acquired Associations.

14.    In addition to receiving financial assistance from FSLIC, the Consolidated Group received tax benefits through special provisions of the Internal Revenue Code ("I.R.C.") with respect to the Tax Benefit Items, including the following:

a.    The I.R.C. stated that the basis in the covered assets of each Acquired Association carried over to First American Bank. As a result, First American Bank acquired the covered assets with pre-acquisition built-in losses. In turn, First American Bank received tax-free financial assistance in the amount of the Covered Asset Losses.

b.    The I.R.C. did not require Adam Corp or the Consolidated Group to include in taxable income the assistance payments that First American Bank received for its Covered Asset Losses, guaranteed yield payments and interest on the FSLIC note.

c.    First American Bank inherited the net operating losses and other tax attributes of the Acquired Associations. The Consolidated Group subsequently used some of these tax attributes to offset its post-acquisition income.

15.    Section 9 requires Adam Corp to share with the FDIC all tax savings (i) that arise out of the preferential tax treatment given to the financial assistance that the FDIC paid to First American Bank, and (ii) with respect to tax attributes related to the acquisition of the assets of the Acquired Associations. Section 9(a) describes types of tax deductions or exclusions ("Tax Benefit Items") that may generate tax benefits. Section 9(b) describes types of tax detriment items that may offset tax benefits.

16.    Section 9(d) sets forth the formula used to calculate the net tax benefit savings—defined as the "Federal Net Tax Benefits"—that Adam Corp is required to share with the FDIC. Section 9(d) provides as follows:

(d) <u>Federal Net Tax Benefits</u>. The Federal Net Tax Benefits for a taxable year shall be Sixty Percent (60%) multiplied by an amount equal to the excess, if any, of:

(1) the Federal income tax liability for such taxable year . . . which would have been incurred by the ACQUIRING ASSOCIATION, or the Consolidated Group, (i) if the Tax Benefit Items described in § 9(a)(1), (3), (4) and (5) had not been deducted, credited or excluded in any taxable year, (ii) if the Tax Detriment Items described in §9(b)(1), (2), (3) and (5) had not been included in income in any taxable year; (iii) if income were reduced by an amount equal to the deductions disallowed under § 9(b)(4) . . . (vi) if any Credits . . .which were included in taxable income for such taxable year . . . were not so included, over

(2) the Federal income tax liability for such taxable year . . . actually incurred by the ACQUIRING ASSOCIATION, or the Consolidated Group [Adam Corp and its subsidiaries]. . .

Assistance Agreement, § 9(d) at 53-54. Section 9(e) provides a substantially similar formula for calculating the net state tax benefit savings ("State Net Tax Benefits") that must be shared with the FDIC.

17.    Thus, to determine the amount of Federal Net Tax Benefits, one calculates the difference between the Consolidated Group's actual tax liability (*i.e.*, the subpart (d)(2) calculation above), and the "hypothetical" tax liability that the Consolidated Group would have had if the Tax Benefit Items had not been afforded special tax treatment under the I.R.C. (*i.e.*, the subpart (d)(1) calculation above). The Section 9(d) calculation is referred to as the "with and without calculation," referring to the difference between Adam Corp's actual tax liability taking into consideration the special tax treatment afforded to the Tax Benefit Items (*i.e.*, the "with" calculation), and Adam's Corp's hypothetical tax liability without taking into consideration the special tax treatment afforded to the Tax Benefit Items (*i.e.*, the "without" calculation). For ease of reference, the "without" calculation is also referred to as calculating the Consolidated Group's "Hypothetical Tax Liability."

6

B.    Adam Corp's Sale Of Stock To Citibank.

18.    Effective March 31, 2005, Adam Corp sold its stock in First American Bank to Citibank for $972 million. On the Consolidated Group's tax return, Adam Corp reported that its basis in the First American Bank stock at the time of the Sale was $1.28 billion. However, that stock basis was approximately $1 billion higher than it would have been but for the special tax treatment afforded to the Tax Benefit Items. The I.R.C. regulations required Adam Corp to make certain adjustments to the stock basis. *See* 26 C.F.R. § 1.1502-32(b)(2). These adjustments were necessary to give effect to the purpose of the consolidated return regulations, which is to treat all the corporations in the Consolidated Group as if they were a single corporation for the purposes of computing the Consolidated Group's tax liability. *See* 26 C.F.R. § 1.1502-32(a)(1). These adjustments are made with respect to taxable income or loss, tax-exempt income, noncapital, nondeductible expenses, and distributions with respect to the stock. *See* 26 C.F.R. § 1502-32(b)(2).

19.    As required by the I.R.C., Adam Corp calculated its taxable income or loss on the sale of stock to Citibank by subtracting its reported basis in the stock ($1.28 billion) and the selling costs ($6 million) from the purchase price ($972 million) it received from Citibank. Based on this calculation, Adam Corp reported a loss of $314 million on the Sale. If the calculation had resulted in a positive number, Adam Corp would have been taxed on the capital gain from the Sale. However, because the result was negative, Adam Corp was able to report a loss and did not pay any tax on the Sale.

20.    Under a proper application of the "with and without calculation" under Section 9(d), Adam Corp's Hypothetical Tax Liability from the Sale was $257.8 million. This Hypothetical Tax Liability is calculated by properly treating the Tax Benefit Items as if they had not been afforded special tax treatment. The difference between the tax that Adam Corp reported

on its tax return as a result of the Sale, which was $0, and the tax that it would have had to pay as calculated pursuant to Section 9(d), is $257.8 million. Section 9 requires Adam Corp to pay the FDIC 60 percent of the $257.8 million, which is $154.7 million. Adam Corp has refused to make that payment.

C.    Future Tax Benefits

21.    Adam Corp has retained approximately $275 million of the capital loss from the Sale and approximately $87 million of net operating losses for use in the future to offset income and thereby receive tax benefits. Adam Corp's future realization of the tax benefits will result in tax benefit sharing obligations to the FDIC because the resulting tax savings would not have existed under the Hypothetical Tax Liability calculation required by Section 9(d).

22.    Adam Corp's full use in the future of the $275 million in capital losses and $87 million of net operating losses would result in, respectively, $58 million and $18 million in tax sharing payments due from Adam Corp to the FDIC pursuant to Section 9.

23.    Adam Corp denies that it has any continuing obligation to share any future tax benefits with the FDIC from the use of the remaining capital losses and net operating losses that it has retained after the Sale to Citibank.

D.    Additional Unshared Tax Benefit Savings.

24.    I.R.C. § 381 carryovers can be Tax Benefit Items or Tax Detriment Items as defined in Sections 9(a)(5) and 9(b)(5). Section 9(a)(5) defines Tax Benefit Items to include specifically: "[a]ny other attributes of items of any ACQUIRED ASSOCIATION to which . . . [First American Bank] succeeds under section 381 of the Code [I.R.C.] whose inclusion on the income tax returns of . . . [Adam Corp] decrease the taxable income of [Adam Corp]." Assistance Agreement, § 9(a)(5) at 50. Section 9(b)(5) states that the term Tax Detriment Items specifically includes: "[a]ny other attributes of items of any ACQUIRED ASSOCIATION to

8

which . . . [First American Bank] succeeds under section 381 of the Code [I.R.C.] which inclusion on the income tax returns of . . . [Adam Corp] increases the taxable income of [Adam Corp]." *Id.*, § 9(b)(5) at 51. The amount of I.R.C. § 381 Tax Benefit Items, net of I.R.C. § 381 Tax Detriment Items, that Adam Corp has failed to take into account in computing its Hypothetical Tax Liability is $1,007,687.

25.     Section 9(f) defines Cable Gain as taxable income or gain attributable to "(i) the sale of certain cable television assets or stock in the corporation owning such assets, and (ii) any recovery pursuant to claims arising on or before November 30, 1988, relating to the purchase of cable television assets . . ." Assistance Agreement, § 9(f) at 56. The Termination Agreement also clarified that Cable Gain included interest on the installment sale of the cable assets. As a result, Cable Gain does not include state tax incurred from the Cable Gain. Adam Corp improperly offset its tax benefits by $1,916,658 in state tax incurred from the Cable Gain.

26.     Adam Corp incorrectly claimed that $1,256,705 in proceeds from the termination of a qualified employment retirement plan of one of the acquired institutions was a Tax Detriment Item under Section 9.

27.     Adam Corp did not include in its calculation of tax benefit sharing $3,324,000 in losses on Goodwill Assets as required by Section 7.2(b)(iii) of the Termination Agreement.

28.     Adam Corp did not account for $1,110,415 in depreciation from the sale of a Covered Asset in 1995. Depreciation is a deductible expense for which the FDIC made assistance payments, and thus it is a Tax Benefit Item.

29.     Adam Corp failed to report $876,958 in recaptured bad debt reserves. Section 7.2(b)(ii)(A) of the Termination Agreement states that any recapture of bad debt reserves, whether under I.R.C. § 481 or otherwise, is a Tax Benefit Item under Section 9.

30.    When Adam Corp wrote off its reserve for FSLIC assistance in 1996, it failed to take into account $734,266 of tax-exempt assistance payments it had previously received from FSLIC. These tax-exempt assistance payments are Tax Benefit Items under Section 9(a)(4) and are required to be included in income under the Hypothetical Tax Liability computation of Section 9(d)(1).

31.    A subsidiary of Adam Corp became insolvent and the subsidiary reported income on its excess loss account (where the tax basis falls below zero, and excess loss account is created, and represents negative tax basis, which can create recapture of income). The subsidiary failed to reflect the FSLIC assistance as taxable income as required by Section 9(d)(1), and thus the recapture reported by the subsidiary should have been $1,788,175 higher.

32.    In 1988, First American Bank sold the stock of its subsidiaries that owned certain cable television assets. In computing its Hypothetical Tax Liability on the sale of such stock, First American Bank failed to make appropriate downward adjustments to the basis of such stock to reflect the utilization of certain losses that were Tax Benefit Items. This failure resulted in an improper overstatement by $1,564,249 of the net operating losses carried forward and subsequently utilized in 1997 and 1998 by Adam Corp to reduce its Hypothetical Tax Liability

33.    The Tax Benefit Items enumerated above in paragraphs 24-32, net of certain corrective adjustments in favor of Adam Corp, total $13,062,708. The resulting tax savings to Adam Corp from these Tax Benefit Items were $4,309,685 and Adam Corp owes the FDIC 60 percent of those tax savings, which equals $2,585,811. The FDIC has demanded that Adam Corp make these payments but Adam Corp has refused to pay the FDIC.

First Cause of Action

(Breach of Contract: Tax Benefit Sharing)

34.    The FDIC repeats and realleges the allegations above as if fully set forth herein.

10

35.    Adam Corp breached Section 9 by failing and refusing to pay to the FDIC the portion of tax savings resulting from the Sale to which the FDIC is entitled under Section 9.

36.    Adam Corp further breached Section 9 by failing and refusing to pay to the FDIC the portion of the tax savings described in paragraphs 24-32 to which the FDIC is entitled under Section 9.

37.    As a result of Adam Corp's breaches of Section 9, the FDIC has been damaged in the minimum amount of $157.3 million.

Second Cause of Action

(Declaratory Judgment: Tax Benefit Sharing)

38.    The FDIC repeats and realleges the allegations above as if fully set forth herein.

39.    There now exists an actual, justiciable controversy within the jurisdiction of this Court and, pursuant to 28 U.S.C. § 2201(a), the Court may declare the rights of the FDIC and Adam Corp under Section 9.

40.    Adam Corp's interpretation of Section 9 is erroneous.  Adam Corp's erroneous interpretation, and its acts and omissions based on that erroneous interpretation, have caused and will continue to cause substantial monetary damage to the FDIC.

41.    The FDIC is entitled to a judgment declaring its rights under Section 9 to obtain savings from past and future tax benefits arising out of Section 9.

<u>Prayer for Relief</u>

WHEREFORE, the FDIC requests that the Court enter a judgment as follows:

(a)     On Count I, a judgment for compensatory damages;

(b)     On Count II, a judgment declaring the FDIC's rights under Section 9 to obtain its share of

Adam Corp's savings from past and future tax benefits; and

(c)     Costs of this action; reasonable attorney's fees; and or pre- and post judgment interest as

permitted by law, and for such other and further relief as the Court deems just and appropriate.

Dated:  November 30, 2007

Respectfully submitted,


Claire L. McGuire (D.C. Bar No. 247924)
Larry L. Goodman (D.C. Bar No. 421980)
Leslie A. Conover (D.C. Bar No. 366826)
Bruce C. Taylor
John A. Davidovich
Shane C. Kiernan
FEDERAL DEPOSIT
INSURANCE CORPORATION
3501 Fairfax Drive
Arlington, VA 22226
Tel: (703) 562-2390
Fax: (703) 562-2481

Attorneys for Plaintiff
Federal Deposit Insurance Corporation

Kirk K. Van Tine (D.C. Bar No. 257139)
David A. Super (D.C. Bar No. 429359)
Samuel J. Waldon (D.C. Bar No. 441885)
Sheila J. Kadagathur (D.C. Bar No. 500647)
BAKER BOTTS L.L.P.
The Warner
1299 Pennsylvania Avenue, NW
Washington, DC 20004
Tel.: (202) 639-7700
Fax: (202) 639-7890

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS

Federal Deposit Insurance Corporation,
550 17th Street, N.W., Washington, D.C. 20429

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    U.S. Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

David Super
Baker Botts, LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 639-7700

## DEFENDANTS

The Adam Corporation / Group,
1111 Briarcrest Drive, Suite 300, Bryan, Texas 77802

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    88888
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ⦿ 1 U.S. Government Plaintiff
- ○ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

- ○ A. *Antitrust*
  - ☐ 410 Antitrust

- ○ B. *Personal Injury/ Malpractice*
  - ☐ 310 Airplane
  - ☐ 315 Airplane Product Liability
  - ☐ 320 Assault, Libel & Slander
  - ☐ 330 Federal Employers Liability
  - ☐ 340 Marine
  - ☐ 345 Marine Product Liability
  - ☐ 350 Motor Vehicle
  - ☐ 355 Motor Vehicle Product Liability
  - ☐ 360 Other Personal Injury
  - ☐ 362 Medical Malpractice
  - ☐ 365 Product Liability
  - ☐ 368 Asbestos Product Liability

- ○ C. *Administrative Agency Review*
  - ☐ 151 Medicare Act

  Social Security:
  - ☐ 861 HIA ((1395ff))
  - ☐ 862 Black Lung (923)
  - ☐ 863 DIWC/DIWW (405(g)
  - ☐ 864 SSID Title XVI
  - ☐ 865 RSI (405(g)

  Other Statutes
  - ☐ 891 Agricultural Acts
  - ☐ 892 Economic Stabilization Act
  - ☐ 893 Environmental Matters
  - ☐ 894 Energy Allocation Act
  - ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

- ○ D. *Temporary Restraining Order/Preliminary Injunction*

  Any nature of suit from any category may be selected for this category of case assignment.

  *(If Antitrust, then A governs)*

- ○ E. *General Civil (Other)*    OR    ○ F. *Pro Se General Civil*

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| O  G. *Habeas Corpus/ 2255* | O  H. *Employment Discrimination* | O  I. *FOIA/PRIVACY ACT* | O  J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| O  K. *Labor/ERISA (non-employment)* | O  L. *Other Civil Rights (non-employment)* | ⊙  M. *Contract* | O  N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☒ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding   O 2 Removed from State Court   O 3 Remanded from Appellate Court   O 4 Reinstated or Reopened   O 5 Transferred from another district (specify)   O 6 Multi district Litigation   O 7 Appeal to District Court from Mag. Judge

**VI.  CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

Filing under 28 U.S.C. 1331 -- all cases to which the FDIC is a party are deemed to arise under U.S. law, by virtue of 12 U.S.C. 1819(b)(2)(A).

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐    DEMAND $ _____    Check YES only if demanded in complaint    JURY DEMAND:    YES ☐    NO ☒

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE  11/30/07    SIGNATURE OF ATTORNEY OF RECORD  _____

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.     COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.