UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION,<br>　　550 17th Street, N.W.,<br>　　Washington, D.C. 20429,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>THE ADAM CORPORATION/GROUP,<br>　　1111 Briarcrest Drive, Suite 300,<br>　　Bryan, Texas 77802,<br><br>　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 1:07-cv-02163 RMU |

### FDIC'S MOTION TO CONSOLIDATE THIS ACTION WITH TRANSFERRED ACTION FROM THE NORTHERN DISTRICT OF TEXAS
### AND
### REQUEST FOR EXPEDITED RULING ON PENDING MOTION TO COMPEL ARBITRATION

The Federal Deposit Insurance Corporation, in its capacity as manager of the FSLIC Resolution Fund (the "FDIC"), respectfully moves this Court to consolidate this action with a clearly related action captioned *The Adam Corporation/Group et al. v. FDIC*, No. 3:07-CV-1933-L, which was transferred to this Court from the U.S. District Court for the Northern District of Texas.[1]   This action and the transferred case, which was initiated by The Adam Corporation/Group ("TACG") *after* this action was filed, are "mirror images" of one another, presenting identical questions of both law and fact.   Accordingly, as explained fully in the

---

[1]  The transferred case has yet to be assigned a docket number by the Clerk of this Court.  The FDIC will notify the Court once a docket number is assigned.

accompanying memorandum in support, consolidation of these cases for all purposes would serve the interests of convenience and economy for both the parties and the Court, and would not result in any confusion or prejudice.

In addition, on November 30, 2007, the same date TACG initiated the Northern District of Texas lawsuit, TACG filed an identical claim with the American Arbitration Association ("AAA") in Dallas, Texas, and TACG filed a motion to compel arbitration in the Northern District of Texas case. Since then, as explained in the accompanying memorandum in support, the initial phases of the AAA arbitration proceedings initiated by TACG have begun to move forward. In light of the fact that TACG's motion to compel arbitration has been fully briefed since early January, and the resolution of that motion has been delayed pending the transfer ruling, the FDIC respectfully requests that, once this case and the transferred case are consolidated, the Court address the motion to compel arbitration as soon as the Court's schedule permits.

Dated: April 30, 2008

Respectfully submitted,

Claire L. McGuire (D.C. Bar No. 247924)
Larry L. Goodman (D.C. Bar No. 421980)
Leslie A. Conover (D.C. Bar No. 366826)
Bruce C. Taylor
John A. Davidovich
FEDERAL DEPOSIT
INSURANCE CORPORATION
3501 Fairfax Drive
Arlington, VA 22226
Tel: (703) 562-2390
Fax: (703) 562-2481

Kirk K. Van Tine (D.C. Bar No. 257139)
David A. Super (D.C. Bar No. 429359)
Samuel J. Waldon (D.C. Bar No. 441885)
Sheila J. Kadagathur (D.C. Bar No. 500647)
BAKER BOTTS L.L.P.
The Warner
1299 Pennsylvania Avenue, NW
Washington, DC 20004
Tel.: (202) 639-7700
Fax: (202) 639-7890

Attorneys for Plaintiff
Federal Deposit Insurance Corporation

## CERTIFICATE REGARDING RULE 7(M) CONFERENCE

Pursuant to Local Civil Rule 7(m), on April 30, 2008, the undersigned counsel conferred with counsel for TACG concerning the relief requested by this motion. Counsel for TACG requested that this certification state that TACG takes no position on this motion because TACG was not provided with an actual copy of the motion. Accordingly, counsel for the FDIC presumes that TACG does not agree to the relief requested.

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 30th day of April, 2008, a true and correct copy of the foregoing was served by United States Mail, first class postage pre-paid, upon the following counsel:

> Kent A. Yalowitz
> Erik C. Walsh
> ARNOLD & PORTER LLP
> 399 Park Avenue
> New York, NY 10022
>
> Michael A. Johnson
> 555 12th Street, N.W.
> Washington, D.C. 20004
>
> Attorneys for TACG
>
> Brian T. Morris
> 5400 Renaissance Tower
> 1201 Elm Street
> Dallas, Texas 75270
>
> Attorney for Citibank, N.A.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, 550 17th Street, N.W., Washington, D.C. 20429, | ) ) ) ) ) | |
| Plaintiff, | ) ) | No. 1:07-cv-02163 RMU |
| vs. | ) ) | |
| THE ADAM CORPORATION/GROUP, 1111 Briarcrest Drive, Suite 300, Bryan, Texas 77802, | ) ) ) ) | |
| Defendant. | ) | |

ORDER

Having considered the FDIC's Motion to Consolidate This Action With Transferred Texas Action From The Northern District of Texas ("Motion"), the brief in opposition thereto and applicable authorities, it is hereby

ORDERED that the Motion is GRANTED and it is further

ORDERED that the action captioned *The Adam Corporation/Group et al. v. FDIC*, No. 3:07-CV-1993-L, is hereby consolidated with this action for all purposes.

DATED: May ___, 2008

_____
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, <br>     550 17th Street, N.W., <br>     Washington, D.C. 20429, <br><br>         Plaintiff, <br><br> vs. <br><br> THE ADAM CORPORATION/GROUP, <br>     1111 Briarcrest Drive, Suite 300, <br>     Bryan, Texas 77802, <br><br>         Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> )      No. 1:07-cv-02163 RMU <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

FDIC'S MEMORANDUM IN SUPPORT OF MOTION TO CONSOLIDATE THIS
ACTION WITH TRANSFERRED ACTION FROM THE
NORTHERN DISTRICT OF TEXAS
AND
REQUEST FOR EXPEDITED RULING ON PENDING MOTION TO COMPEL
ARBITRATION

The Federal Deposit Insurance Corporation, in its capacity as manager of the FSLIC

Resolution Fund (the "FDIC"), respectfully moves this Court to consolidate this action with a

clearly related action captioned *The Adam Corporation/Group et al. v. FDIC*, No. 3-07-CV-

1993-L, which was transferred to this Court from the U.S. District Court for the Northern District

of Texas.[1]  There is no dispute that this action and the transferred case are "mirror images" of

one another, presenting identical questions of both law and fact.  Accordingly, consolidation of

---

[1]  The transferred case has yet to be assigned a docket number by the Clerk of this Court.  The
FDIC will notify the Court once a docket number is assigned.

these cases for all purposes would serve the interests of convenience and economy for both the parties and the Court, and would not result in any confusion or prejudice.

## I. BACKGROUND

A.    Procedural Status.

These two actions arise from a 1988 transaction between The Adam Corporation/Group ("TACG") and the FDIC's predecessor, the Federal Savings and Loan Insurance Corporation ("FSLIC"). In that transaction, TACG purchased the assets and assumed certain liabilities of eleven failed savings and loan associations in Texas, which were consolidated into a new savings and loan association which came to be known as First American Bank ("FAB") and the stock of which was owned by TACG. Both this case and the transferred case involve the sharing of tax benefits under the agreements between FDIC/FSLIC and TACG.

On November 30, 2007, the FDIC filed its complaint in this Court. Approximately one hour after the FDIC filed its complaint, TACG filed its complaint in the Northern District of Texas. That same day, TAGC filed an identical claim with the American Arbitration Association ("AAA") in Dallas, Texas. Also on that day, TACG filed a motion in the Northern District of Texas to compel arbitration of its claim, to which the FDIC responded on December 19, 2007. Also on December 19, 2007, the FDIC filed a motion with the Northern District of Texas to transfer the TACG litigation to this Court pursuant to 28 U.S.C. § 1404(a). On that same date, the FDIC filed an Amended Complaint in its suit in this Court to add the issues raised by TACG in its Texas federal court litigation so that all of the issues in dispute between the FDIC and TACG would also be before this Court.[2]

---

[2] On February 11, 2008, this Court issued a minute order granting TACG's unopposed motion for an extension of time to answer the FDIC's First Amended Complaint:

[Footnote continued on next page]

On March 24, 2008, the Magistrate Judge in the Northern District of Texas lawsuit issued "Findings, Conclusions, and Recommendations" on the FDIC's motion to transfer venue. The Magistrate Judge expressly found that "[b]oth parties consented and waived objection to jurisdiction in the federal courts of either the District of Columbia or the State of Texas for all legal actions arising from the [agreement]." Findings, Conclusions, and Recommendations, Case No. 07-cv-1993, at 8 (N. D. Tex March 24, 2008) (attached as Exhibit A). The Magistrate Judge further found that the FDIC's complaint in this case was filed before TACG filed its complaint in Texas federal court, and that there is substantial overlap between the two actions. Accordingly, the Magistrate Judge recommended that TACG's suit in the Northern District of Texas be transferred to this Court under the "first-to-file" rule.

On April 21, 2008, U.S. District Judge Sam A. Lindsay issued an Order accepting the findings and conclusions of the Magistrate Judge and transferring TACG's lawsuit to this Court. *See* Order, Case No. 07-cv-1993 (N. D. Tex. April 21, 2008) (attached as Exhibit B). Judge Lindsay granted the FDIC's motion to transfer "because the District of Columbia action was filed first, there is substantial overlap between the two cases, and TACG has not shown

---

[Footnote continued from previous page]

> Defendants time to move, answer or otherwise respond to Plaintiff's Complaint is enlarged until 10 days after the United States District Court for the Northern District of Texas rules on the two pending motions in The Adam Corporation/Group et al. v. FDIC, No. 3:07-cv-1993-L: (i) the FDIC's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) and (ii) The Adam Corporation/Groups' Motion to Compel Arbitration. Further, the Court hereby suspends the time for holding conferences pursuant to Rules 16 and 26(f) of the Federal Rules of Civil Procedure until after the foregoing motions are resolved.

The February 11, 2008, minute order was the last activity in this case.

compelling evidence justifying an exception to the first-to-file rule." *Id.* at 2-3. The Court "decline[d] to address [TACG's] Motion to Compel Arbitration," indicating that, in light of the transfer, the issue of arbitrability should be decided by the federal court in the District of Columbia. *Id.* at 2 (footnote). On April 23, 2008, the Clerk of the U.S. District Court for the Northern District of Texas provided the Clerk of this Court with certified copies of the Transfer Order and the docket sheet from the Texas federal court litigation. *See* 4/23/08 Letter from Clerk of N.D. Texas (attached as Exhibit C).

Accordingly, pending before this Court are (a) this motion to consolidate the two actions, and (b) TACG's motion to compel arbitration of its claims.

B.    The Nature Of This Action.

The terms of the 1988 acquisition by TACG were set forth in a contract called an Assistance Agreement. Both this action and the transferred case relate to a dispute over the proper interpretation of one provision of the Assistance Agreement, as well as provisions of another contract, called the "Termination Agreement," entered between TACG and the FDIC in 1996.

1.    Tax benefit sharing under Section 9 of the Assistance Agreement.

In general, under the 1988 Assistance Agreement, FSLIC agreed to provide FAB with certain financial assistance in connection with the assets and liabilities of the Acquired Associations. Section 9 of the Assistance Agreement—the provision at issue in both this action and the transferred case—required TACG to share with FSLIC any federal and state net tax savings that TACG and its subsidiaries actually realized as a result of certain types of tax deductions, exclusions, and other tax attributes set forth in Section 9. Specifically, FSLIC (now the FDIC) was entitled to 60 percent of those tax savings and TACG retained 40 percent.

2.    The Termination Agreement.

On July 31, 1996, TACG and the FDIC terminated the Assistance Agreement by entering

into a Termination Agreement. Under the Termination Agreement, the FDIC paid TACG $9

million and, in return, the FDIC's obligation to make any further assistance payments to TACG

was extinguished. However, the Termination Agreement expressly provided that Section 9 of

the Assistance Agreement, and certain other specified provisions, remained binding on the

parties. *See* Termination Agreement §§ 2.2 at 2-3; 7.2(b). The Termination Agreement also

contains a forum selection clause, which provides, in part, as follows:

> Any legal action or proceedings with respect to this Agreement shall be brought in the
> Federal courts of the United States of America located in *either the District of
> Columbia* or the State of Texas and *each party hereto submits to the jurisdiction of
> such courts and hereby waives any objections on the grounds of venue, forum non
> conveniens, or any similar grounds.*

Termination Agreement § 13.4 at 56 (emphasis added).

3.    TACG's 2005 sale of FAB stock to Citibank resulted in tax savings to be shared.

On March 31, 2005, TACG sold all of its shares in FAB to Citibank, Texas ("Citibank")

for $972 million (the "Sale"). As part of the Sale, TACG retained the continuing obligation to

provide to the FDIC 60 percent of any federal and state net tax savings realized by TACG under

Section 9. On its federal income tax return covering the period when the Sale occurred, TACG

reported a capital loss of approximately $314 million as a result of the Sale. TACG generated

this $314 million capital loss—instead of incurring a taxable capital gain—because TACG's

basis in the stock of FAB was approximately $1 billion higher than it would have been without

the Section 9 tax benefits. Accordingly, as a direct result of those tax benefits, TACG paid

$257.8 million less in federal income tax than it would have paid if it had not utilized the tax

benefits. Under Section 9, TACG owes the FDIC 60 percent of those tax savings, or $154.7

million ($257.8 million in tax savings x 60 percent share to the FDIC = $154.7 million). TACG has refused to pay the FDIC the $154.7 million it owes, as well as $2.6 million in additional tax savings under Section 9 of the Assistance Agreement, for a total of $157.3 million owed to the FDIC. On November 30, 2007, the FDIC filed its complaint in this action, demanding that TACG pay the $157.3 million it owes.

B.    The Nature Of The Transferred Case.

TACG's complaint in the transferred Northern District of Texas action relies upon the same tax sharing provisions of the Assistance Agreement that are at issue in this case. TACG's claim is based on a statute enacted by Congress in 1993 known as the "Guarini Amendment." TACG alleges that the Guarini Amendment had the effect of prohibiting TACG from claiming certain deductions. Although TACG was well aware of the Guarini Amendment and its effects fifteen years ago when the statute was enacted, TACG now alleges that, as a result of the Guarini Amendment, TACG overpaid its tax sharing obligations to the FDIC by approximately $41 million, which is nearly *all* of the tax sharing amounts that TACG has *ever* paid the FDIC.

TACG's claim in arbitration is identical to its claim in the Northern District of Texas lawsuit. TACG bases its motion to compel arbitration on a narrow dispute resolution provision contained in the Termination Agreement. On December 19, 2007, the FDIC filed an opposition to TACG's motion to compel arbitration, pointing out that the Termination Agreement does not permit arbitration of disputes relating to TACG's tax benefit sharing obligations, which is the subject of both the FDIC's and TACG's claims. The motion to compel arbitration has been fully briefed and ripe for decision since January 2008.

## II.  ARGUMENT

A.    This Action And The Transferred Case Should Be Consolidated Under Rule 42(a).

Rule 42(a)(2) of the Federal Rules of Civil Procedure provides that "if actions before the

court involve a common question of law or fact, the court may . . . consolidate the actions." Fed.

R. Civ. Pro. 42(a); *see American Postal Workers Union v. United States Postal Service*, 422 F.

Supp. 2d 240, 245 (D.D.C. 2006).  "The decision whether to consolidate cases under Rule 42(a)

is within the broad discretion of the trial court." *Id.* (quoting *Stewart v. O'Neill*, 225 F. Supp. 2d

16, 20 (D.D.C. 2002)).  In deciding to exercise such discretion, "courts weigh considerations of

convenience and economy against considerations of confusion and prejudice." *Id.* (quoting

*Chang v. United States*, 217 F.R.D. 262, 265 (D.D.C. 2003)).[3]

Here, there is a compelling basis to consolidate the transferred case with this action.

Although Rule 42(a) permits consolidation even where there is a *single* common question of law

or fact, in this case, nearly *all* of the issues of law and fact are common between the two actions.

Both actions raise common questions of contract interpretation as to TACG's tax benefit sharing

obligations under Section 9 of the Assistance Agreement.  Although the FDIC's and TACG's

respective claims focus, in part, on different clauses of Section 9, both claims depend upon the

language and operation of Section 9 in its entirety and require an analysis and interpretation of

Section 9 as a whole.

Further, both actions depend on substantially the same facts and circumstances

surrounding the negotiation and execution of the Assistance Agreement and the Termination

---

[3]  Local Civil Rule 40.5(d) provides that this Court shall hear and decide whether this case
should be consolidated with the recently transferred case because this case is the earlier-
numbered case.

Agreement, and the parties' underlying intent in entering those agreements. Similarly, both actions will focus on substantially the same facts concerning the parties' performance of their respective obligations under Section 9.

In addition, both actions depend predominantly on the same sources of evidence—the same agreements, the same documents relating to negotiations, the same documents relating to performance, and the same witnesses. Moreover, even where the parties' respective claims might focus, in part, on facts that are unique to that claim—for example, the FDIC's claim would focus on the circumstances surrounding TACG's sale of FAB's stock to Citibank in 1996, while TACG's claim would focus on the circumstances surrounding the enactment of the Guarini Amendment—those "unique" facts can only be viewed within the context of the language of Section 9 and the facts regarding parties' underlying intent, which is common to both actions.

In short, the two actions clearly meet the "common question" test for consolidation under Rule 42(a). In fact, TACG's claim in the transferred case would be a compulsory counterclaim to the FDIC's Complaint in this Court, because TACG's claim "arises out of the transaction or occurrence that is the subject matter of [the FDIC's] claim," and TACG's claim "does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1). Given that TACG's claim would qualify as a compulsory counterclaim to the FDIC's claim, the two actions plainly satisfy the standard for consolidation.

Under these circumstances, TACG cannot dispute that the two actions should be consolidated. In fact, in its opposition to the motion to transfer filed in the Texas Court, TACG conceded that the two actions are now "mirror images" of each other. *See* TACG's Brief in Opposition to FDIC's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) at 7 (N.D. Texas Dkt. No. 25) (the two actions became "mirror images" after the FDIC's complaint was

amended). It is clear that the parties, the witnesses and the Court would be best served if TACG's and the FDIC's claims are addressed at the same time in a consolidated proceeding. A consolidated proceeding would ensure that the related claims are resolved efficiently and consistently. Further, consolidation would avoid the obvious duplication of effort by the parties, the witnesses and the Court that would result from conducting separate proceedings. Because this Court is now in a position to resolve all of the related issues between the FDIC and TACG, this case and TACG's lawsuit should be consolidated.

B.    The FDIC Requests Expedited Consideration Of TACG's Motion To Compel Arbitration.

On November 30, 2007, the same date TACG initiated its suit in the Northern District of Texas, TACG filed an identical claim with the AAA in Dallas, Texas. Since then, while the FDIC's motion to transfer venue and the arbitrability issue were pending before the federal court in Texas, the initial phases of the AAA arbitration proceedings have begun to move forward. The Northern District of Texas has now resolved the transfer issue, but TACG's motion to compel arbitration is fully briefed[4] and remains pending, to be decided in this Court. Because TACG has refused to agree to the FDIC's request for a stay of the arbitration while TACG's motion to compel arbitration is pending, the AAA is proceeding with the appointment of arbitrators and has already required the parties to file their claims and responses. As a result, TACG is coming closer each day to receiving by default what it has not received from any Court—the ability to arbitrate a matter that, under the parties' agreements, is not subject to arbitration. In light of the fact that TACG's motion to compel arbitration has been fully briefed

---

[4] *See* N.D. Texas Dkt. No. 3 (TACG's motion to compel arbitration); Dkt No. 17 (FDIC's response); Dkt. No. 24 (TACG's reply).

since early January, and the resolution of that motion has been delayed pending the transfer ruling, the FDIC respectfully requests that, once the two cases are consolidated, the Court address the motion to compel arbitration as soon as the Court's schedule permits. If the Court believes that further briefing or argument on the arbitrability issue would be helpful, the FDIC will respond on whatever schedule the Court deems appropriate.

## III.  CONCLUSION

For the foregoing reasons, the FDIC requests that its motion be granted, that this action and the case transferred from the Northern District of Texas be consolidated, and that the Court proceed to address TACG's pending motion to compel arbitration.

Dated:  April 30, 2008

Respectfully submitted,

_Oriel A. f_

| | |
|---|---|
| Claire L. McGuire (D.C. Bar No. 247924) | Kirk K. Van Tine (D.C. Bar No. 257139) |
| Larry L. Goodman (D.C. Bar No. 421980) | David A. Super (D.C. Bar No. 429359) |
| Leslie A. Conover (D.C. Bar No. 366826) | Samuel J. Waldon (D.C. Bar No. 441885) |
| Bruce C. Taylor | Sheila J. Kadagathur (D.C. Bar No. 500647) |
| John A. Davidovich | BAKER BOTTS L.L.P. |
| FEDERAL DEPOSIT | The Warner |
| INSURANCE CORPORATION | 1299 Pennsylvania Avenue, NW |
| 3501 Fairfax Drive | Washington, DC 20004 |
| Arlington, VA 22226 | Tel.: (202) 639-7700 |
| Tel: (703) 562-2390 | Fax: (202) 639-7890 |
| Fax: (703) 562-2481 | |

Attorneys for Plaintiff
Federal Deposit Insurance Corporation

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE ADAM CORPORATION/GROUP, | § | |
| | § | |
| Petitioner/Plaintiff, and | § | |
| | § | |
| CITIBANK, N.A., | § | |
| | § | |
| Nominal Petitioner/Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:07-CV-1993-L (BH) |
| | § | |
| FEDERAL DEPOSIT INSURANCE | § | |
| CORPORATION, solely in its capacity as | § | |
| Manager of the FSLIC Resolution Fund, | § | |
| | § | |
| Respondent/Defendant. | § | Referred Motion |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS

Pursuant to 28 U.S.C. § 636(b) and the District Court's orders of reference, filed December

3, 2007, and January 25, 2008, these matters were referred to the undersigned United States

Magistrate Judge for hearing, if necessary, and for the issuance of proposed findings and

recommendation to the District Court. Before the Court are the following:

> (1)    *Defendant FDIC's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)*
> ("Mot."), filed December 19, 2007;
>
> (2)    *FDIC's Memorandum of Law in Support of Its Motion to Transfer Venue Pursuant
> to 28 U.S.C. § 1404(a)* ("Mot. Br."), filed December 19, 2007;
>
> (3)    *Appendix in Support of FDIC's Memorandum of Law in Support of Its Motion to
> Transfer Venue Pursuant to 28 U.S.C. § 1404(a)* ("Mot. App."), filed
> December 19, 2007;
>
> (4)    *Petitioner's Brief in Opposition to FDIC's Motion to Transfer Venue Pursuant to 28
> U.S.C. § 1404(a)* ("Resp."), filed January 8, 2008;
>
> (5)    *Petitioner's Consolidated Appendix in Support of Its Opposition to FDIC's Motion*

- 1 -

*to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) and Reply Brief in Support of Motion to Compel Arbitration* ("Resp. App."), filed January 8, 2008; and

(6)    *The FDIC's Reply Brief in Further Support of Its Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)* ("Reply"), filed January 18, 2008.[1]

Having reviewed the pertinent filings above and the law applicable to the issues raised, the Court

recommends that Defendant FDIC's *Motion to Transfer Venue* be **GRANTED**.

## I. BACKGROUND

This action stems from a 1998 sales transaction between Plaintiff The Adam

Corporation/Group ("TACG") and the predecessor of Defendant Federal Deposit Insurance

Corporation's ("FDIC"), the Federal Savings and Loan Insurance Corporation ("FSLIC"). TACG

purchased the assets and assumed certain liabilities of eleven failed savings and loan associations

in Texas and consolidated them into a new savings and loan association that ultimately became

known as First American Bank ("FAB"). FAB then became part of an affiliated group of TACG's

subsidiaries (referred to collectively herein as TACG) that filed consolidated tax returns.[2]

The terms of the 1988 sales transaction between TACG and FSLIC were set forth in the

Assistance Agreement. Under the Assistance Agreement, FSLIC agreed to provide FAB with

certain financial assistance to cover losses that might arise out of the assets and liabilities of the

eleven failed associations. TACG also received tax benefits through special provisions of the

Internal Revenue Code. In return, TACG agreed to share sixty percent of the federal and state tax

---

[1]Local Rule 7.1 provides for a motion, a response, and a reply. A party may not file supplemental pleadings, briefs, authorities, or evidence without permission of the presiding judge. Since Petitioner did not seek leave to file *Petitioner's Supplemental Memorandum in Support of Motion to Compel Arbitration and in Opposition to FDIC's Motion to Transfer Venue* filed on February 11, 2008, and the supplemental document filed by Petitioner on February 13, 2008, these documents will not be considered. Defendant FDIC's objection regarding Petitioner's *Supplemental Memorandum* is **DENIED** as moot.

[2]On March 31, 2005, TACG sold all of its shares in FAB to Plaintiff Citibank, Texas ("Citibank"), for $972 million pursuant to a contract dated August 23, 2004.

savings that it realized with FSLIC.

On July 31, 1996, TACG and the FDIC agreed to terminate the Assistance Agreement. (*See* docket #2 Ex. A; docket #18 Ex. C) (hereinafter, "Termination Agreement"). Pursuant to the Termination Agreement, the FDIC's obligation to make any further assistance payments to TACG was extinguished in return for a lump sum payment of $8 million. The Termination Agreement contained an arbitration clause which states, in part:

> [i]n the event that any dispute arises between or among any of the parties hereto relating to any Covered Asset Purchase SRA Report Exceptions, Post-Closing Expense Items, Post-Closing Receipt Items, AmWest Dispute Items, or any disputes regarding a party's obligations under this Agreement (collectively, a "Dispute Item"), which AmWest and the FDIC Manager are unable to amicably resolve, then either party may submit each specific unresolved Dispute Item to arbitration pursuant to the provisions of Section 6.1...The parties intend that to the maximum extent possible, but otherwise consistent with the provisions of this Agreement, arbitration shall be the sole dispute resolution process regarding any Dispute Item that is not amicably resolved.

Termination Agreement at § 6.1(a). The clause further states that arbitration proceedings shall take place in Dallas, Texas, or at a mutually agreeable location. (*Id.* at § 6.1(c)). In addition, the Termination Agreement contained the following forum selection clause:

> Any legal action or proceedings with respect to this Agreement shall be brought in the Federal courts of the United States of America located in either the District of Columbia or the State of Texas and each party hereto submits to the jurisdiction of such courts and hereby waives any objections on the grounds of venue, forum non conveniens, or any similar grounds.

(*Id.* at § 13.4).

The parties dispute whether, under the Assistance Agreement and Termination Agreement, TACG retained the obligation to share sixty percent of certain federal and state tax savings that it realized as a result of any tax benefit items with the FDIC. The FDIC and TACG attempted to negotiate a possible resolution of the FDIC's claims for its share of the tax benefits TACG has

received. As part of those negotiations, they entered into a standstill agreement whereby neither party would initiate litigation pending settlement discussions. (Resp. App. Ex. 1I). The original standstill agreement was extended "until and through November 29, 2007." (Resp. App. Ex. 1J). Neither the original standstill agreement nor the extension specified a time or controlling time zone. (*See* Resp. App. Exs. 1I and 1J).

At 12:01 a.m. Eastern Standard Time ("EST") on November 30, 2007, the FDIC sued in the District Court for the District of Columbia ("DC District Court") for breach of contract and declaratory judgment, alleging that it was entitled to the sixty percent of the federal and state tax savings under the Assistance Agreement. (Mot. App. Ex. C, at 26, 35-36). TACG filed a motion to compel arbitration in the Northern District of Texas at 12:00 a.m. Central Standard Time ("CST") on November 30, 2007. (Mot. Br. at 6; Resp. at 2). On December 19, 2007, the FDIC amended its complaint before the DC District Court to include a request for a declaratory judgment that the dispute is not subject to arbitration. (Mot. App. Ex. A, at 15-16).

On December 19, 2007, the FDIC filed the instant motion to transfer this case to the DC District Court based on first-to-file principles and pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and in the interest of justice.

## II. ANALYSIS

When related cases are pending before two federal courts, the first-to-file rule instructs the court with the later-filed action to transfer it to the first-filed forum. *American Bankers Life Assurance Co. of Fla. v. Overton*, 128 Fed. Appx. 399, 403 (5th Cir . 2005). Based on "principles of comity and sound judicial administration," *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997), the purpose of the rule is "to avoid the waste of duplication, to avoid rulings

- 4 -

which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result," *West Gulf Maritime Ass'n v. ILA Deep Sea Local*, 751 F.2d 721, 730 (5th Cir. 1985). The rule permits transfer between divisions in the same federal district as well as districts organized under different federal circuits. *See Firstliner Indus., Inc. v. Ground & Pipe Tech., LLC*, 2005 WL 2861002 at *2 (S.D. Tex. Oct. 31, 2005).

## A.    First-Filed Action

In the instant case, the standstill agreement, which was agreed to by sophisticated parties represented by counsel, did not specify a controlling time or time zone to mark the time of expiration. (*See* Resp. App. Exs. 1I and 1J). It merely ran "until and through November 29, 2007." (Resp. App. Ex. 1J). Based on this agreement, both sides apparently expected litigation as early as the stroke of midnight on November 30, 2007. Indeed, the filing times provide evidence that minutes, and even seconds, mattered to the two parties. The FDIC filed suit in the DC District Court at 12:01 a.m. EST on November 30, 2007, whereas TACG filed its motion to compel arbitration in this Court at 12:00 a.m CST on the same day. (Mot. App. Ex. C, at 26; Resp. at 2). TACG asserts that the Court should take into account the time zone difference, and that it filed first because its motion to compel was filed within the first minute after the expiration of the standstill agreement in CST whereas the FDIC's action was filed in the second minute in EST. (Resp. at 7).

TACG's first argument is not persuasive. The Fifth Circuit has used absolute time to determine first-to-file status without regard to time zone differences. *See e.g. Formaldehyde Inst., Inc. v. United States Consumer Prod. Safety Comm'n*, 681 F.2d 255, 262 (5th Cir.1982) (action filed a few seconds after 11:00 a.m. CST was filed before an action filed at 12:00:10 p.m. EST); *Southland Mower Co. v. United States Consumer Prod. Safety Comm'n*, 600 F.2d 12, 14 (5th

Cir.1979) (action filed at 11:00 a.m. CST was filed before an action filed at 12:01 p.m. EST). *See also Mead Corp. v. Stuart Hall Co., Inc.*, 679 F. Supp. 1446, 1453 (S.D. Ohio 1987) (action filed at 3:53 p.m. EDT was filed before an action filed at 3:30 p.m. CST).

TACG also asserts that a 59 minute difference is inconsequential to determining first-to-file status and that to permit otherwise would only encourage a race to the courthouse. (Resp. at 7-8). Contrary to this argument, the Fifth Circuit has applied the first-to-file rule to cases filed in close proximity. *See Formaldehyde Inst.*, 681 F.2d at 262 (less than 10 second difference); *Southland Mower*, 600 F.2d at 14 (less than one minute difference). *See also Sabre Inc. v. Northwest Airlines, Inc.*, 2004 WL 2533867 at *2 (N.D. Tex. Nov. 8, 2004) (one day difference). In one instance where it declined to apply the first-to-file rule, the Fifth Circuit found that two actions were filed at substantially the same time. *See Mobil Oil Exploration Co. v. F.E.R.C.*, 814 F.2d 998, 1000-01 (5th Cir. 1987) (declining to split minutes to determine priority of filing and instead opting for a coin toss).

In this case, the FDIC filed its action in the DC District Court 59 minutes prior to TACG's motion to compel in this District. Consequently, the FDIC's action was filed first.

## B.    Substantial Overlap

When a party moves to transfer under the first-to-file rule, the Court with the second-filed suit must examine the two pending cases to see if the subject matter "might substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 606 (5th Cir. 1999). The first-to-file rule "does not, however, require that cases be identical," but merely that there is a "substantial overlap" in issues and parties. *Save Power*, 121 F .3d at 950.

The FDIC states that the two disputes both arise out of the Assistance and Termination

- 6 -

Agreements, namely whether the FDIC is entitled to sixty percent of the federal and state tax savings. (Mot. Br. at 10). TACG does not dispute that the two actions might substantially overlap, but it contends that the two actions did not become "mirror images" of each other until the FDIC filed its amended complaint on December 19, 2007. (Resp. at 7).

Because the first-to-file rule does not require that the cases be identical, the fact that the FDIC later amended its complaint to include a request for a declaratory judgment on whether the dispute was subject to arbitration does not defeat application of the rule. There was a substantial likelihood of overlap in issues and parties at the time the suit was filed. Additionally, as long as the two initial disputes contain the required overlap, a subsequently amended complaint relates back to the initial complaint. *See Sabre Inc.*, 2004 WL 2533867, at *2-3. The FDIC has therefore demonstrated the likelihood of a substantial overlap in the two suits. *Cadle Co.*, 174 F.3d at 605-06.

## C.    Transfer to DC District Court

"Once the likelihood of substantial overlap between the two suits has been demonstrated, it is no longer up to the second-filed court to resolve the question of whether both should be allowed to proceed." *Cadle Co.*, 174 F.3d at 605-06. Instead, "the proper course of action [is] for the [second-filed] court to transfer the case" to the first-filed court. (*Id.* at 606). It is then the responsibility of the first-filed court to decide "whether the second suit filed must be dismissed, stayed, or transferred and consolidated." *Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997). A party can only avoid application of the first-to-file rule by demonstrating the presence of "compelling circumstances" that caution against the transfer. *Mann Mfg.*, 439 F.2d at 407. One example of compelling circumstances is when the first-filed suit is filed in a less favorable forum in anticipation of the subsequent suit. *Service Corp. Inter. v. Loewen Group Inc.*, 1996 WL 756808,

- 7 -

at *2 (S.D. Tex. Nov. 29, 1996) (citations omitted).

Here, TACG has not shown that the first-filed suit was filed in a less favorable forum. Both parties consented and waived objection to jurisdiction in the federal courts of either the District of Columbia or the State of Texas for all legal actions arising from the Termination Agreement. *See* Termination Agreement at § 13.4. Nor has TACG otherwise presented "compelling" evidence that would justify an exception to the first-to-file rule.

In conclusion, it is within the sound discretion of the District Court to determine whether a case should be transferred under the first-to-file-rule. *Cadle*, 174 F.3d at 603. "Although the "first to file" rule is pedestrian, its simplicity furthers comity between courts and should not be casually ignored." *Eastman Med. Prods., Inc. v. E.R. Squibb & Sons, Inc.*, 199 F.Supp.2d 590, 595 (N.D. Tex. 2002) (Lynn, J.). Because the FDIC filed first, there is substantial overlap between the actions, and TACG has not shown compelling evidence justifying an exception, the Court concludes that the case should be transferred to the DC District Court under the first-to-file rule.[3] *Cadle Co.*, 174 F.3d at 606.

## III. CONCLUSION

For the reasons stated above, the Court recommends that Defendant FDIC's *Motion to Transfer Venue* be **GRANTED**, and that this action be transferred to the District Court for the District of Columbia.

---

[3]Because the Plaintiff's action should be transferred under the first-to-file rule, the Court does not address, and expresses no opinion on, whether a transfer pursuant to § 1404(a) would be proper. *See Luckett v. Peco Foods, Inc.*, 2008 WL 534760, at *3 (S.D. Miss. Feb. 22, 2008) (a motion to transfer pursuant to the first-to-file rule does not depend on the presence or absence of the § 1404(a) considerations); *02 Micro Intern. Ltd. v. Monolithic Power Sys., Inc.*, 2006 WL 887391, at *2 (E.D. Tex. Mar. 28, 2006) (considering first-to-file separately from § 1404(a) factors).

**SO RECOMMENDED** on this 24th day of March, 2008.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **THE ADAM CORPORATION/GROUP,** | § | |
| | § | |
| Petitioner/Plaintiff, | § | |
| | § | |
| and | § | |
| | § | |
| **CITIBANK, N.A.,** | § | |
| | § | |
| Nominal Petitioner/Nominal Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:07-CV-1993-L** |
| | § | |
| **FEDERAL DEPOSIT INSURANCE** | § | |
| **CORPORATION, solely in its capacity as** | § | |
| **Manager of the FSLIC Resolution Fund,** | § | |
| | § | |
| Respondent/Defendant. | § | |

## ORDER

Before the court are: (1) the Findings, Conclusions, and Recommendations of the United

States Magistrate Judge, filed March 24, 2008; (2) Petitioner's Objection to Magistrate Judge

Ramirez's March 24, 2008 Findings, Conclusions, and Recommendations, filed April 7, 2008; (3)

FDIC's Response to Petitioner's Objection to Magistrate Judge Ramirez's March 24, 2008 Findings,

Conclusions, and Recommendations, filed April 11, 2008; and (4) Petitioner's Reply in Support of

its Objection to Magistrate Judge Ramirez's March 24, 2008 Findings, Conclusions, and

Recommendations, filed April 14, 2008.

The magistrate judge recommended that the court grant FDIC's Motion to Transfer Venue

Pursuant to 28 U.S.C. § 1404(a), filed December 19, 2007. The magistrate judge found that because

the Federal Deposit Insurance Corporation ("FDIC") sued in the District of the District of Columbia

**Order – Page 1**

before this case was filed, transfer to that court is proper pursuant to the first-to-file rule, and did not

reach the question of whether a section 1404(a) transfer was appropriate.[*]  Petitioner The Adam

Corporation/Group ("TACG") filed a document titled "objection" to the magistrate judge's Findings,

Conclusions, and Recommendations (the "Report").  TACG asks the court to act quickly on the

magistrate judge's recommendations and "does not object to the adoption of the Recommendation

in that respect."  Obj. 3.  TACG does, however, ask the court to "make clear that its adoption of the

Recommendation shall not be deemed to express any opinion on the correctness of the background

statements in the Recommendation," arguing that the magistrate judge made certain errors and that

the background contains dicta.  The FDIC contends that TACG's request is unnecessary.

The court has considered the Report, the objection, response, and reply, and determines that

TACG's objection is based upon a future and hypothetical concern, and that the court need not parse

the Report to determine what is or is not dicta at this point.  The parties do not dispute the legal

analysis, conclusion, and recommendation of the magistrate judge, and if the FDIC at some point

attempts to rely upon the magistrate judge's findings, then may TACG dispute the accuracy of those

findings and dispute whether they are binding on the District of Columbia court.

The court **overrules** TACG's objection and **accepts** the findings and conclusions of the

magistrate judge.  The court **grants** FDIC's Motion to Transfer Venue Pursuant to 28 U.S.C. §

1404(a) because the District of Columbia action was filed first, there is substantial overlap between

---

[*]The court had also referred Petitioner's Motion to Compel Arbitration, filed November 30, 2007,
to the magistrate judge.  The Report does not consider the motion to compel arbitration, but quotes *Cadle Co.
v. Whataburger of Alice, Inc.*, 174 F.3d 599, 605-06 (5th Cir. 1999), in which the court held that "[o]nce the
likelihood of substantial overlap between the two suits has been demonstrated, it is no longer up to the
second-filed court to resolve the question of whether both should be allowed to proceed."  Because the court
accepts the magistrate judge's recommendation and transfers this case to the District of Columbia, it **declines**
to address Petitioner's Motion to Compel Arbitration.  This motion should be addressed by the transferee
court.

the two cases, and TACG has not shown compelling evidence justifying an exception to the first-to-file rule. Accordingly, the court **transfers** this case to the District of the District of Columbia. The clerk of the court shall effect the transfer in accordance with the usual procedure.

It **is so ordered** this 21st day of April, 2008.

Sam A. Lindsay
United States District Judge

# EXHIBIT C

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

Division:    Dallas
1100 Commerce Room 1452
Dallas, TX. 75242-1003

Apr 23, 2008

Clerk of Court
District of the District of Columbia
1225 E. Barrett Prettyman, 333 Constitution Ave. NW
Washington, DC  20001

SUBJECT: 3-07-cv-1993-L   The Adam Corporation, et al vs. FDIC

Dear Deputy Clerk:

The above action has been transferred to your court.

Enclosed is a certified copy of the transfer order and docket sheet. You may access electronically filed documents at our DCN CM/ECF web address: https://ecf.txnd.uscourts.gov. A guest login and password may be found on our website at: http://ntnet.txnd.circ5.dcn/pdf/irc/guest_login.pdf.

Once logged into our CM/ECF database, you can query the case and download or print the PDFs for your court's file. If you find our headers at the top of each document to be a problem, they can be removed by going through Utilities, Maintain Your Account, and turning off the PDF Header before you download or print the documents.

Any documents not available electronically are enclosed in paper format.

Please acknowledge receipt of the certified copy of the transfer order, docket sheet and original documents, if any, by email to the Intake Section of the appropriate division:

**Assist_Team@txnd.uscourts.gov**

Please reference our case number and brief style in the subject of your email acknowledgment.

Sincerely,
KAREN MITCHELL
Clerk of Court