UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| THE ADAM CORPORATION/GROUP *et al.*, | : : : | | |
| Plaintiffs, | : : | Civil Action No.: | 08-0753 (RMU) |
| v. | : : | Document Nos.: | 7, 15 |
| FEDERAL DEPOSIT INSURANCE CORPORATION, Solely in its Capacity as Manager of the FSLIC Resolution Fund, | : : : : : | | |
| Defendant. | : : | | |

| | | | |
|---|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, | : : : | | |
| Plaintiff, | : : | Civil Action No.: | 07-2163 (RMU) |
| v. | : : | Document No.: | 12 |
| THE ADAM CORPORATION/GROUP, | : : | | |
| Defendant. | : : | | |

**MEMORANDUM OPINION**

GRANTING THE FEDERAL DEPOSIT INSURANCE CORPORATION'S UNOPPOSED MOTION TO
CONSOLIDATE CASES; GRANTING THE ADAM CORPORATION/GROUP'S MOTION TO COMPEL
ARBITRATION; DENYING AS MOOT THE FEDERAL DEPOSIT INSURANCE CORPORATION'S
MOTION TO STAY ARBITRATION

**I. INTRODUCTION**

This matter is before the court on the Federal Deposit Insurance Corporation's ("FDIC")

motion to consolidate cases, the Adam Corporation/Group's ("TACG") motion to compel

arbitration and the FDIC's motion to stay arbitration. Each party has asserted monetary demands

against the other stemming from TACG's promise to share a portion of its tax revenue with the FDIC. TACG claims the dispute falls under an arbitration clause agreed to by both parties, while the FDIC argues the arbitration clause does not encompass disputes over TACG's tax-sharing obligation. Because the FDIC's motion to consolidate the two cases is unopposed and the court determines that consolidation is proper, it grants that motion. And because the court concludes that the parties' dispute is arbitrable, it grants TACG's motion to compel arbitration and denies as moot the FDIC's motion to stay arbitration.

## II. BACKGROUND

### A. Factual History

The seeds of this dispute were planted in the wake of the savings and loan crisis of the 1980s, in a 1988 transaction between TACG and the predecessor of the FDIC, the Federal Savings and Loan Insurance Corporation ("FSLIC"). FDIC's Opp'n to Mot. to Compel Arbitration at 2. In this transaction, eleven insolvent Texas savings and loan institutions were consolidated into one new savings and loan association now known as First American Bank ("FAB").[1] *Id.* FAB was an indirect subsidiary of TACG, and TACG owned the stock of FAB. *Id.* The terms of the transaction were memorialized in an "Assistance Agreement" between FSLIC, FAB and TACG. *Id.* In the Assistance Agreement, FSLIC promised to provide financial assistance to FAB and TACG, in turn, promised to share with FSLIC a portion of the value of

---

[1] The organization now named First American Bank was originally named the NuOlney Savings Association. Over the few years following the 1988 transaction, the name of the NuOlney Savings Association changed several times: first to the Olney Savings and Loan Association, then to the AmWest Savings Association, then to First American Bank Texas, and finally to First American Bank. For simplicity, the court will refer to this organization only by its current name, First American Bank ("FAB"). Compl. ¶¶ 5-8.

certain tax benefits to which TACG was entitled as a result of the acquisition of the eleven failed institutions. *Id.* at 2-3. The tax-sharing provision was set forth in Section 9 of the Assistance Agreement. *Id.* at 2.

In 1996, TACG and the FSLIC's successor, the FDIC, terminated the Assistance Agreement by entering into the "Termination Agreement." *Id.* at 3. The Termination Agreement extinguished the FDIC's promise to provide financial assistance to TACG, but preserved TACG's obligation to share its tax benefits with the FDIC, stating, "Section 9 of the Assistance Agreement is not terminated by this Agreement and . . . [the parties'] respective obligations thereunder survive without change or alteration as set forth in the Assistance Agreement." FDIC's Mot. to Stay Arbitration, Ex. 5 ("Termination Agreement") at 22-23. The Termination Agreement went on, however, to establish several "clarifications of Section 9 issues," which modified the methodology of computing TACG's tax-sharing obligation. *Id.* at 23-29. Significantly, the Termination Agreement also contained an arbitration clause in which the parties agreed to arbitrate "any dispute . . . relating to . . . [any of four specific 'dispute items'] or any disputes regarding a party's obligations under this Agreement," *id.* at 18-19, and a forum selection clause establishing that "[a]ny legal action or proceedings with respect to this Agreement shall be brought in the Federal courts . . . located either in the District of Columbia or the State of Texas," *id.* at 56.

TACG sold the stock of FAB in 2003, at which time, it asserts, it realized it had miscalculated its tax-sharing obligation and overpaid the FDIC by approximately $40 million. TACG's Mot. to Compel Arbitration at 4. When TACG sought reimbursement for its overpayment, the FDIC responded by agreeing that the calculation method had been erroneous:

3

in its view, TACG had in fact *underpaid* its tax-sharing obligation because the sale of the FAB stock had yielded tax savings, $150 million of which the FDIC contended it was entitled to under the tax-sharing agreement. FDIC's Opp'n to Mot. to Compel Arbitration at 4-5.

### B.  Procedural History

The parties attempted to negotiate a resolution of their competing demands and entered into "standstill agreements" to ensure that neither party would initiate litigation while their settlement discussions were pending. *Id.* at 5. The last standstill agreement expired on November 30, 2007. *Id.* At 12:01 Eastern Standard Time on that day, the FDIC filed a complaint in this court that was docketed as Civil Action No. 07-2163. *Id.* Approximately one hour later – about midnight Central Time – TACG filed a complaint in the United States District Court for the Northern District of Texas. *Id.* at 5-6. TACG also filed a claim with the American Arbitration Association ("AAA") in Dallas, Texas, and a motion in the Northern District of Texas to compel arbitration of its claim. *Id.* at 6. The FDIC filed a motion in the Northern District of Texas to transfer venue to this court, which the Texas court granted after applying the Fifth Circuit's "first-to-file" rule.[2] *Id.* After the Texas suit was transferred to this court as Civil Action No. 08-0753, the FDIC moved to consolidate the two actions. *See* FDIC's Mot. to Consolidate. TACG then filed a "renewed" motion to compel arbitration, and the FDIC requested that the AAA panel in Texas stay its arbitration proceedings until after this court ruled on the motion to compel arbitration. FDIC's Mot. to Stay Arbitration at 1. When the AAA panel denied that request, the FDIC filed an identical motion in this court, asking that the court stay the

---

[2]  "The Fifth Circuit adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir.1997).

arbitration proceedings pending resolution of TACG's motion to compel arbitration. *Id.* The FDIC's motion to consolidate the two cases, TACG's motion to compel arbitration and the FDIC's motion to stay arbitration are now ripe for decision.

### III.  ANALYSIS

#### A.  The Court Grants the FDIC's Motion to Consolidate Cases

In its motion to consolidate Civil Action Nos. 07-2163 and 08-0753, the FDIC describes the two cases as "'mirror images' of one another, presenting identical questions of both law and fact." FDIC's Mot. to Consolidate at 1.  TACG filed a two-page response "agree[ing] that consolidation would serve the interests of convenience and economy of the Court and the parties" and stating that it did not oppose the FDIC's motion.  TACG's Response to Mot. to Consolidate at 1.  The court agrees with both of the parties that the actions concern the same question – namely, whether disputes over TACG's tax-sharing obligation are arbitrable – and, therefore, should be consolidated.  FED. R. CIV. P. 42(a)(2) (authorizing consolidation of actions that involve a common question of law or fact).  Accordingly, the court grants the FDIC's motion to consolidate and turns to the merits of TACG's motion to compel arbitration.

#### B.  Legal Standard for Motion to Compel Arbitration

The Federal Arbitration Act ("FAA") provides that "a written provision in . . . a contract to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable save upon any grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA creates a strong presumption in favor of enforcing arbitration agreements and "[a]ny doubts concerning the scope of arbitrable issues should be

resolved in favor of arbitration." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987) (stating that arbitration agreements must be rigorously enforced); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (noting that federal policy favors arbitration). Nevertheless, parties cannot be forced into arbitration unless they have agreed to do so. *AT & T Techs. Inc. v. Commc'ns Workers*, 475 U.S. 643, 648-49 (1986). Moreover, the authority of arbitrators to resolve disputes is derived from the agreement of parties to engage in arbitration. *Equal Employment Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). Because arbitration provisions are in essence a matter of contract between the parties, it is for the courts to decide whether the parties are bound by a given arbitration clause. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (holding that "a gateway dispute about whether the parties are bound by a given arbitration clause raises a question of arbitrability for a court to decide") (internal quotation omitted).

Such questions of arbitrability are typically brought before the court pursuant to section 4 of the FAA, which permits a party to petition any United States district court which would otherwise have subject-matter jurisdiction "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. When presented with a motion to compel arbitration, a district court must "determine the enforceability of the agreement [to arbitrate] and decide whether arbitration should be compelled." *Nelson v. Insignia/ESG, Inc.*, 215 F. Supp. 2d 143, 146 (D.D.C. 2002). It is well-settled law that to make such a determination, courts must engage in a two-part inquiry. *Id.* at 149-50. First, the court must decide whether the parties entered into a valid and enforceable arbitration agreement. *Nur v. K.F.C. USA, Inc.*, 142 F. Supp. 2d 48, 50-51 (D.D.C. 2001). If the court finds that the parties did enter a valid

arbitration agreement, the second step is to determine whether the arbitration agreement encompasses the claims raised in the complaint.  *Id*.

### C.  The Court Grants TACG's Motion to Compel Arbitration

The first step of the two-part inquiry is undisputed: both parties concede that they entered into a valid and enforceable arbitration agreement.  *See* TACG's Mot. to Compel Arbitration at 5; FDIC's Opp'n to Mot. to Compel Arbitration at 8.  The second question, however, creates more difficulty.  TACG contends that the plain language of the arbitration agreement encompasses disputes over TACG's tax-sharing obligation.  TACG's Mot. to Compel Arbitration at 5.  The FDIC, on the other hand, maintains that the arbitration clause of the Termination Agreement was expressly limited to specific, narrow categories of disputes and did not encompass disputes over TACG's tax-sharing obligation.  FDIC's Opp'n to Mot. to Compel Arbitration at 9.  The court addresses each of these arguments in turn.

TACG's contention that disputes over its tax-sharing obligation are arbitrable is based on its reading of the arbitration provision of the Termination Agreement.  Section 6.1 of the Termination Agreement, the arbitration clause, states:

> In the event that any dispute arises between or among any of the parties hereto relating to any Covered Asset Purchase SRA Report Exceptions, Post-Closing Expense Items, Post-Closing Receipt Items, AmWest Dispute Items, or any disputes regarding a party's obligations under this Agreement (collectively, a "Dispute Item"), which AmWest[3] and the FDIC Manager are unable to amicably resolve, then either party may submit each specific unresolved Dispute Item to arbitration pursuant to the provisions of this Section 6.1 . . . .  The parties intend that to the maximum extent possible, but otherwise consistent with the provisions of this Agreement, arbitration shall be the sole dispute resolution process regarding any Dispute Item that is not amicably resolved.

Termination Agreement at 18-19.

---

3       FAB was previously named AmWest.  *See supra* note 2.

Thus, the parties' dispute over TACG's tax-sharing obligation is arbitrable if it constitutes a "Dispute Item" within the meaning of the Termination Agreement's arbitration clause. And because the parties agree that the first four of the five categories of Dispute Items ("dispute[s] . . . relating to any Covered Asset Purchase SRA Report Exceptions, Post-Closing Expense Items, Post-Closing Receipt Items [and] AmWest Dispute Items") do not apply to the dispute here, the sole task of the court is to determine whether the disagreement over TACG's tax-sharing obligation falls under the fifth category of Dispute Items, which provides for arbitration of "dispute[s] . . . relating to . . . any disputes regarding a party's obligations under [the Termination] Agreement."

TACG maintains that the fifth category of Dispute Items is a broad, catch-all provision that unambiguously encompasses the dispute at issue here. TACG's Mot. to Compel Arbitration at 6-7. Moreover, TACG contends that the dispute here not only "relates to" a dispute regarding a party's obligations under the Termination Agreement; it *is* a dispute regarding a party's obligations under the Termination Agreement because the Termination Agreement modified the tax-sharing arrangement originally set forth in the Assistance Agreement. *Id.* at 7-8.

The FDIC interprets the arbitration provision quite differently. It concedes that section 6.1 provides for arbitration of disputes relating to the parties' obligations under the Termination Agreement, but maintains that the "classic narrow language" of the provision encompasses only rights and obligations created by the Termination Agreement, not rights and obligations originally created by the Assistance Agreement and modified by the Termination Agreement such as the tax-sharing arrangement. FDIC's Opp'n to Mot. to Compel Arbitration at 11-12. The FDIC further urges the court to read the clause at issue within the context of the Termination

Agreement as a whole, and suggests that this holistic perspective can only reasonably yield a narrow interpretation of the arbitration clause. *Id.* at 13-18.  This argument is twofold: first, the FDIC contends that a broad interpretation of the arbitration clause would render superfluous the Termination Agreement's forum selection clause because if arbitration were the sole remedy for disputes related to the Termination Agreement, there would be no judicial involvement and hence no need for a forum selection clause. *Id.* at 13-14.  Second, the FDIC points out that the first four categories of Dispute Items provide for arbitration of specific, quickly-resolved issues surrounding the winding-up of the FDIC's payment obligation. *Id.* at 15-18.  In the FDIC's view, the fifth category of Dispute Items was similarly intended to encompass only narrow issues that required resolution soon after the closing of the Termination Agreement. *Id.*  Under this interpretation, the arbitration clause does not apply to disputes concerning TACG's tax-sharing obligation, which was "expected to continue indefinitely into the future." *Id.* at 14.

The FDIC provides no textual or legal support for its proposition that the arbitration clause encompasses only rights and obligations created in the first instance by the Termination Agreement.  To the contrary, the plain language of the clause provides for arbitration of "any disputes regarding a party's obligations under [the Termination] Agreement."  Termination Agreement at 18.  Giving this phrase its most commonsense interpretation, "a party's obligation[] under" an agreement means an obligation that is derived, in whole or in part, from the agreement.  TACG's tax-sharing obligation fits squarely within this definition because it was created in the Assistance Agreement and modified through the "clarifications" in the Termination Agreement. *Id.* at 23-29.  The court's interpretation is bolstered by the well-settled case law directing it to construe the Termination Agreement "with a healthy regard for the federal policy favoring arbitration."  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24; *see also Mitsubishi Motors Corp. v.*

*Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (noting that "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . [and opining that] as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability") (citations omitted).

Neither of the FDIC's other arguments undermines this conclusion. First, the court is unpersuaded by the FDIC's claim that a broad interpretation of the arbitration clause would render the forum selection clause superfluous. As TACG points out, the forum selection clause could apply to suits to compel arbitration or enforce an arbitration award. *See Kvaerner ASA v. Bank of Tokyo-Mitsubishi, Ltd., N.Y. Branch*, 210 F.3d 262, 267 (4th Cir. 2000) (holding that there was no conflict between a contract's arbitration clause and its venue clause). Thus, a broad construction of the arbitration clause does not render the forum selection clause superfluous. The court also rejects the FDIC's strained contention that the first four Dispute Items, all of which refer to categories of specific disputes to be resolved shortly after the closing of the Termination Agreement, dictate a narrow interpretation of the fifth Dispute Item. The first four specific Dispute Items are clearly of a different character than the fifth, which provides for arbitration of "any disputes regarding a party's obligations under this Agreement." Termination Agreement at 18. But the most obvious reading of the arbitration clause as a whole – especially in light of the mandate to construe ambiguities in favor of arbitration – is that it established four specific categories that the parties anticipated would be the subject of disputes, followed by a final "catch-all" category of disputes that could not be anticipated with particularity, but that the parties intended to resolve through arbitration. *See Ga. Power Co. v. Cimarron Coal Corp.*, 526 F.2d 101, 106 (6th Cir. 1975) (holding that a contract provision was arbitrable after concluding

that it "lack[ed] the specific details of the other portions of the Agreement . . . but that [was a result of] the fact that it [wa]s something of a 'catch-all' provision designed to take care of the kinds of changes which cannot be predicted in detail, but which experience teaches do occur"). Accordingly, just as there is no conflict between the arbitration clause and the forum selection clause, there is also no conflict between the first four narrow Dispute Items and the final broad Dispute Item, which encompasses the dispute at issue here. As a result, the court determines that the parties' dispute over TACG's tax-sharing obligation, falling within the arbitration clause of the Termination Agreement, is arbitrable. Finally, because the FDIC's motion to stay arbitration requested a stay pending resolution of TACG's motion to compel arbitration, the motion to stay arbitration is now moot.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the FDIC's unopposed motion to consolidate, grants TACG's motion to compel arbitration and denies as moot the FDIC's motion to stay arbitration. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 10th day of November, 2008.

RICARDO M. URBINA
United States District Judge